We'll hear the next case, United States v. Dante Lee. May I proceed? Yes you may. May it please the court, 17.3 septillion sounds like a video game score. But it's only as impressive as the forensic lab producing it. And that score spelled game over when Judge Arcara wrongly excluded evidence tending to discredit the Erie County Crime Lab's reliability, dooming my client's conviction. Now what's my prime struggle on this appeal, among others? Articulating clearly for the court, in my view, the probative value and the critical need for the evidence that the judge precluded. So what you have here is a case study in that evidence because it was aired at a full-blown evidentiary hearing before a trial. And what did that evidence show? Well, it showed by admission of the prosecutor below that this lab gets plenty, plenty of federal DNA samples a year. He said roughly 10 a year. That's basically one a month. So it's not some infrequent or outlier occurrence. They're regularly taking these samples. Two, the evidence showed that the manufacturer of these federal easy-collect kits, the standard DNA collection kit used by the FBI and every federal government law enforcement agency recommends a specific extraction, DNA extraction protocol called punch robotics. And despite receiving roughly one of these samples a year, the Erie County Crime Lab shuns that recommended method. It simply doesn't use that method and hasn't validated any extraction procedure at all. Third. You're challenging the reliability of the DNA evidence, the soundness of the experts' conclusions. Weren't these questions for the jury? Exactly, and we were not permitted by virtue of the exclusion of Maria Orsino's testimony, I should say, to properly put that question before the jury. The consensus of authority is that these objections that I've raised throughout the first point, which is candidly included mainly as background for point two here, are matters for the jury's consideration. They go to weight, not admissibility. Further, the Supreme Court tells you that DNA evidence is uniquely persuasive and it has a singular tendency, risk to confuse and mislead, and therefore you need a wide berth in cross-examining this material. And it's particularly critical in this case, Judge Chin, because the law says with regard to probabilistic genotyping software in general and STR mix in particular, that the evidence is inadmissible, inadmissible, Judge, in the absence of internal validation at the lab itself. And the government rightly, as trial counsel predicted it would, flaunted the rigorous internal control mechanisms and validation protocol that this novel form of forensic science allegedly and did, in fact, undergo at the lab. You cannot use that as both the lab's alleged proficiency and integrity as both a sword and a shield while simultaneously denying us the means of circumstantially and inferentially, I should say, contesting that by showing, no, this lab is not necessarily a paragon of scientific virtue or some sort of gold standard. And going back to my proffer on this, the excluded evidence would have permitted that inference and that jury argument by showing that, A, the lab shunned the recommended DNA extraction protocol for federal easy-collect devices, that the alternative method that it did use should have worked, should have produced a measurable sample. The DNA experts who testified at trial offered opinions based on a second swab, right? Well, we didn't have a DNA expert who testified for reasons known only to trial counsel. No, I meant the government's experts testified. You're arguing that the Court abused its discretion in not letting cross-examination about the first test, which was about a first swab. Well, not allowing us to present evidence of the first swab at all. There was no evidence presented about the first swab. The government experts who testified at trial analyzed a second swab. So my question is, why was it an abuse of discretion for the trial judge to say, I don't think what happened with respect to the first swab is relevant to the analyses that were presented at trial? It may not have been an abuse of discretion if the ruling were limited or the issue were limited to one of confrontation, but we have a Fifth and Sixth Amendment right to compulsory process and the right to present a defense and to present our version of the facts, and our version of the facts goes to challenging the integrity and the bias and motive of the lab, and we weren't able to do that because the judge precluded our witness, who actually worked for the lab and for the government and testified at a pre- I want to be sure I understand. Are you now talking about what Judge Chin was talking about, and that is the first swab? Correct. Correct. The first, look, there was a tortured procedural history recounted in point two of this brief where the government couldn't extract a sample from swab one and then shopped the application for a new warrant to four different judges. I've never seen anything like it. It may be unique practice in the Western District of New York. I'm not sure. But it wasn't relied on. The government didn't rely on the first swab at all and basically did it over. So wouldn't it have been arguably confusing for the jury to hear evidence about the first swab when the government wasn't relying on the first swab? No confusion when you read this record, Judge. It's a 700-page record. The DNA evidence, the government billed it as the most significant proof in the case, and the king of it all consumed 230 pages of a 700-page record, Judge. And I've read this record because I had to learn this material in the first instance. The thing was already so muddled up and confused that any marginal increment of additional confusion could have been handled by a simple limiting instruction, and the argument at the end of the day is a very simple one. They're holding out this lab and its internal validation protocol as the guarantor of reliability of this novel and untested scientific method. I have a right to say not so fast, jury. You decide if this lab is all it's cracked up to be or whether we can show you in this very case that it didn't use proper extraction methods, that it cut budgetary corners and took shortcuts in the name of expediency for itself, perhaps at the expense of best forensic practice. So think twice, think twice before you credit this black box evidence, which they're telling you is great evidence because we know, because we, this lab, tested it seven days from here to Sunday. Don't rely on it at face value. And by the way, the nature of the black box evidence itself, how do you cross-examine a machine, Judge? You don't. You need more latitude, and the Supreme Court recognizes that. Going back to Melendez-Diaz versus Massachusetts, this is a unique kind of evidence. It's uniquely probative. It's uniquely persuasive. It's the CSI effect. When you hear, Judge, a juror hears 17.3 septillion times more likely, that's it. It's game over for the case. Let's be realistic about it. So we need the ammunition to be able to put before the jury. Is it your view that that septillion number, I still haven't figured out quite how many zeros that is. It's in the record, 27, 29. But my question is, forget the first swab. Are you saying that use of that expression was itself misleading, wrong and misleading? I am not. What I'm saying is misleading and wrong, and this is dense material, and I tried the best that I could to understand it and to distill it properly. They can testify to 17.3 septillion, and to some extent I'm hemmed in by the record that was made or wasn't made below. What I'm saying was wrong was how that evidence, the prosecutor mischaracterized that evidence in summation by resorting to what the Supreme Court called in McDaniel v. Brown, it's a case from around 2010, something called the prosecutor's fallacy. And I submitted the 28J level in a letter with the Powell case from the second department, and I know that's not binding on this court, but when you see the comments that the prosecutor made in that case, they're exactly identical to what happened here. What's crucial to understand with this prosecutor's fallacy, and the Supreme Court explains it in the scientific literature, explain it, that the 17.3 septillion figure is what's known as a conditional probability. It's no affirmative evidence of guilt, and it's no affirmative evidence that the defendant or the accused's DNA actually appears on the weapon. It simply compares two hypotheses that are put before an expert. Is it three unknowns? And there's debate in the forensic literature about how to select the number of putative contributors to this complex mixture. So it compares two remote hypotheses, 20 zeros apart, right, that it's three unknown individuals or in this case the defendant plus two unknowns, and it says it's 17.3 septillion times more likely, if you grant the assumption that there's three contributors, that it's D plus two versus three unknowns. Was it wrong what he said? It wasn't wrong, but. He laid out the statistical possibility. Not wrong what he said, what she said, actually, Ludeman, wrong what the prosecutor said. The prosecutor said the DNA, the defendant's DNA was found on that gun, was on that gun, and the science proves the DNA was on, his DNA was on that gun. All things that were wrong and that the expert witness herself, Ludeman, said were wrong, that the Supreme Court says is wrong, and that the Second Department reversed the conviction in Powell over. So it's not wrong what Ludeman, the expert, says. You're well over your time. Yeah. Do you want to use your rebuttal now or do you want to save your rebuttal? No, I'll save it. Okay. We'll hear from the government. May it please the Court, Monica Richards representing the United States of America on this appeal. The jury here convicted based on totality of the evidence, so I appreciate the counsel's concession that perhaps the argument really goes to the nature and the circumstances regarding that first swab and what happened there. But frankly, based on this verdict, we don't know. It's just a guilty or not guilty. There weren't any special interrogatories. So for all we know, this jury, viewing the evidence in the light, and now this Court's review, viewing the evidence in the light most favorable to the verdict, it could have just been based on the circumstances of that encounter. The jury, for all we know. Did the jury hear any evidence about the first swab? The jury did not hear evidence about the first swab, no. But with regard to the encounter, I was referring to the police encounter, how this came to be at all. No, no, I understand there's other evidence, including what the police officers saw, et cetera. But in terms of the DNA evidence, the jury was only presented with analyses relating to the second swab. Right. And then they also heard the experts and the witnesses' statements with regard to the validation and accreditation procedures for that second swab and for the swab as it was taken and brought into the lab and what their procedures are, the history of their accreditation and validation process with regard to that process was before the jury. How do you respond to counsel's argument that, in summation, the prosecutor said his DNA was found on the gun, which could be an overstatement? Right. So there's a fair ‑‑ there's a couple things. First off, we all know that the arguments, the jury's instructed that the prosecutor's arguments and statements of counsel are not evidence. So there's that. But it was also a fair inference from the evidence. That is what we were asking the jury to do, was to determine that, yes, this was his DNA on the gun. That was the ultimate question. It wasn't some hypothetical could it have been, might it have been. It was based, proof beyond a reasonable doubt, was this his DNA on the gun. So with regard to that, there's some fair inferences that were made and maybe some shorthand or shortcut language, but at A267 in the record, the prosecutor definitely said it the way it should have been said in the full statement of what this likelihood ratio is. And he said it's the probability of the defendant's DNA in two unknown people divided by three unknown people, the likelihood ratio is. He said it right. He laid out the probabilities and then essentially argued this proves that the DNA was on the gun. Right. And I'm not going to apologize or represent that it was a perfect statement with regard to especially the last statement that was made at the closing in the rebuttal argument, but there's also been leeway granted by this Court to statements made in rebuttal and that he took a shorthand at the end of this argument really doesn't overprovide a basis for this Court to reverse where the jury heard the evidence from the witness who multiple times was asked and explained what the likelihood ratio is and was asked specifically by her on cross-examination. So you're not saying this is at A235 of the record. You're not saying that it's 1.73 times 10 to the 25th, which is 24 zeros, Your Honor, times more likely that this is Dante Lee's DNA than it is not. You're not saying that, right? So that was asked. There's a couple points I've highlighted in my brief, but A235 and A237 are the ones that I've got blue sticky notes on that say that this was she was not saying that. She was not saying what the prosecutor shorthanded to in the closing argument. So with regard to the nature of the evidence again here, I really strongly feel that we don't know. Maybe the jury did agree with Mr. Lee that this DNA evidence wasn't worth its consideration. Maybe it was too technical. Maybe it was too difficult. Maybe they just didn't like it. We have no idea, but we do know that there was other evidence on which this verdict was based and that the circumstances of that encounter made it proof beyond a reasonable doubt that this gentleman was the person who'd handled that gun most recently. He was in the field. He ran away from the officers. He'd been observed by the officers making a motion indicative of possession of a weapon. He took off from the scene. He argued in the closing argument that he wouldn't have done this just for the baggie of marijuana that was found in his pocket. He was a convicted felon and shouldn't have had a gun, and that's why he ran. So with regard to the second swab, I think that was the second point in the brief.  And then the ineffective assistance counsel claim here I do believe is one that's a rare case that could be decided on the record presented here. Lee's trial counsel advocated very strongly against that warrant that permitted the second swab, and there were no false statements in the warrant application which would have provided a basis for a Franks hearing. There's no further questions. Thank you. Thank you. We'll hear the rebuttal. Your Honor, just very quickly, you never know because most criminal trials result in general verdicts what the jury relied on, and that's not the standard. We do investigative work and we look for clues, and the primary clue is what the prosecutor stresses in his closing argument. In this case, the prosecutor stressed that the likelihood ratio itself was proof beyond a reasonable doubt, and we wouldn't need the likelihood ratio or the DNA if the officers had actually seen Lee possess the gun or throw it out the window. And he called it the most significant evidence in the case, and he called it the king of the case. So we know what the government asked the jury to rely on. Of course, we can't crawl inside their heads and find out what they relied on, but when you have a 700-page record and 230 pages of it are devoted to DNA and the prosecutor touts this as the king of the case and says it's proof beyond a reasonable doubt by itself and we wouldn't need it if the cops had actually seen anything, you can pretty well suppose what the jury relied on. Now, that's point one. Point two, if the court doesn't accept the premise articulated by the Supreme Court that DNA is special, it's sui generis, it's more powerful and probative than anything that's come before it, I lose this case. If we go with that premise and what the Supreme Court has cautioned, that because of its unique probity and its unique potential for confusion and overstatement, prosecutors have a heightened duty to present it with the greatest precision and care. That did not happen here. The opposite of that happened, not for bad reason. It just happened in summation. He said the science shows that the defendant's DNA was on that gun wrong, untrue. He said the likelihood ratio itself is proof beyond a reasonable doubt, so it was the pillar of his case. And he said twice that the defendant's DNA was found and was on the gun. So that's it. If there's a heightened duty to present this stuff with the utmost care and precision, that didn't happen here. It was a short trial. The evidence was very equivocal and thin in the absence of the DNA evidence. The institutional cost of a reversal of this glorified state gun case, not the greatest institutional cost that this court has ever seen. He's entitled to be able to challenge that evidence properly and have it presented to the jury with great rigor and great scruple and great care. And for those reasons, I ask the court to reverse. Thank you.